SUPREME COUNCIL AMERICAN LEGION OF HONOR V.W. W. LARMOUR.

No. 6866.

1. **Appearance Waives Citation.** — Under authority of York v. The State, 73 Texas, 655, defendant having filed its answer in October, 1887, and amended its answer at the April Term of the court thereafter, it voluntarily submitted itself to the jurisdiction of the court.

2. **Insurance, Contract of.**—A contract of insurance is an agreement in consideration of a specific sum in the aggregate or at short intervals of time during the contract to make payment in money upon the destruction or injury of something in which the assured has an interest.

3. **Certificate by Supreme Council of American Legion of Honor to Members on Insurance Contract.**—The benefit certificates issued by the Supreme Council American Legion of Honor to its members are insurance contracts. They are subject to the rules of law applying to insurance policies. The testimony supports the finding that the corporation is an insurance company.

4. **Fact Case.**—See testimony held sufficient to show the truth of representations made by the deceased as to her family history.

5. **Mutual Benefit Associations—Penalties.**—Article 2971a, Sayles' Civil Statutes (Act of March, 1885), prescribes that nothing in this title (title 53—Insurance)

"shall be construed to affect or in any way apply to mutual relief associations * * * organized under the laws of any other State which have no capital stock and whose relief funds are created and sustained by assessments made upon the membership of the association." This relieves these companies from the penalties of "twelve per cent upon the amount of loss with reasonable attorney fees for failure to pay as specified in the policy."

6.   **American Legion of Honor a Mutual Benefit Association.**—The American Legion of Honor is shown to be such a mutual benefit association as contemplated in article 2971a, Sayles' Civil Statutes, and is not subject to the penalties imposed upon other insurance companies in article 2953, Revised Statutes.

Error from McLennan. Tried below before Hon. Eugene Williams. The opinion states the case.

*E. A. McKenney,* for plaintiff in error.—1. The court erred in its judgment of this cause in rendering judgment against the defendant in the two items, "(1) together with 12 per cent damages on said principal sum," and "(2) also $500 attorney fees," thereby holding that defendant was a life and health insurance company and subject to the statutes governing the same, because the same is a judgment against the law and evidence in this: The evidence in this cause showed conclusively that defendant is a mutual relief association, conducting its business by lodges or by councils made up of its members in each locality, who meet at least once a month, and in their respective council rooms; and that defendant has no capital stock, and its relief funds are created and sustained by assessments upon its members in accordance with its by-laws and regulations; and as such an organization this defendant is not within the letter or spirit of said statute, but is expressly excepted.

The court also erred in its conclusions of law and fact in finding as a fact that defendant was an insurance company, subject to the regulations governing such corporations, and that defendant's benefit certificate to Mrs. Larmour was a contract of insurance such as contemplated by the statute.

And also erred as a conclusion of law that defendant was included in or contemplated by the statute governing life and health insurance. Sayles' Civ. Stats., art. 2971a.

2.   The court erred in rendering judgment against this defendant in "the sum of $6955.55, being the principal amount sued for arising on defendant's policy or benefit certificate, with 8 per cent interest per annum from August 21, 1886," because same is a judgment against the evidence in this: The answers and representations made by the assured in her application, and forming part of it, were false as to the cause of her mother's death and as to her own condition of health. These representations induced the issuance of the policy and thereby

operated as a fraud upon the company.   [See opinion.]   49 Texas, 11; 51 Texas, 250; Story's Eq. Juris., secs. 193–216; 22 Wall., 47.

*Clark, Dyer & Bollinger* and *J. B. Scarborough,* for defendant in error.—1. The American Legion of Honor, composed of its supreme and subordinate councils, constitutes an insurance company within the spirit and true meaning of the term, and hence subject to the law governing such companies.    Farmer v. The State, 69 Texas, 561; 105 Mass., 149; 18 Neb., 281; May on Ins., sec. 550; 66 Iowa, 26; Bacon on Benefit Societies, secs. 51, 52.

2.   The American Legion of Honor is not a mutual relief association, as contemplated by title 20, article 2971a, Revised Statutes.

3.   The application of Mrs. Larmour and the answers therein made, when construed in connection with the limitation, "according to my best knowledge and belief," do not amount to warranties.    Bacon on Benefit Societies, sec. 216, and authorities therein cited.    The court is especially referred to a discussion of this point by Supreme Court of Illinois, in Illinois Masons v. Winthrop, 85 Ill., 537; 59 Wis., 165; Clapp v. Benefit Ass'n, 16 N. E. Rep., 433; 6 N. E. Rep., 103; 78 Me., 541; 39 Ind., 475; 5 Otto, 673.

HOBBY, PRESIDING JUDGE, *Section A.*—This is a suit instituted in the District Court of McLennan County, by the defendant in error, W. W. Larmour, against the Supreme Council of the American Legion of Honor, located in Boston, Mass., to recover the amount of a benefit certificate, No. 72,637, issued by said council, under its constitution and by-laws, to Mrs. Mary Larmour, wife of the defendant in error; and in which benefit certificate plaintiff in error (said council) bound itself to pay to the defendant in error, the husband of Mrs. Mary Larmour, out of its benefit fund, in accordance with the laws governing such fund, a sum not to exceed $5000 upon her death.

It was alleged that the said certificate was issued on May 7, 1884, by said supreme council after Mrs. Larmour's election as a member (sixth degree) of the Waco Council No. 1156 of said Legion of Honor, and after the application and preliminary medical examination usual in such cases by the medical examiner of said council in February, 1884, which were approved by the medical examiner in chief of said supreme council.    The death of Mrs. Larmour on May 2, 1886, and the formal proofs of the same on June 22, 1886, were also alleged in the petition filed April 26, 1887.

It was alleged that the defendant had refused to pay to W. W. Larmour, defendant in error, the said sum of $5000; that E. A. McKenney was the local agent or secretary at Waco, Texas, of plaintiff in error, and praying citation to him, and also praying for judgment for said $5000, and also reasonable attorney fees, $1000, and penalty of $600 for

failure to pay said $5000. Citation was served on E. A. McKenney as secretary of Waco Council No. 1156, American Legion of Honor. The defendant the Supreme Council American Legion of Honor answered April 6, 1888, amending its original answer filed in October, 1887. The answer contained general and special exceptions and pleas to the merits. It alleged as ground of special demurrer that it was not a resident of McLennan County, Texas, and not therefore subject to the jurisdiction of the court; that plaintiff's allegations as to the agent or representative of defendant in said county are contradictory, etc., and there is no averment as to any particular agent, etc. It pleaded that it was not an insurance company; denied that it had an agent or representative in said county, and specially pleaded that by reason of untrue answers of Mrs. Larmour, the assured, in her medical examination she deceived defendant and invalidated the certificate.

A trial was had October 22, 1888, before the court without the intervention of a jury. The following conclusions were found by the court:

"1. That the defendant is in court, subject to the jurisdiction of this court.

"2. That the defendant is an insurance company subject to be controlled by the provisions of law governing such companies.

"3. That the benefit certificate and application do not contain words of warranty or representation." [Misrepresentation?]

"4. That it is not shown that Mrs. Scarbrough died of or was afflicted with consumption * * * or hereditary disease; nor that applicant stated untruly as to the cause of Mrs. Scarbrough's death."

Judgment was rendered for the plaintiff in the lower court for $5000 and interest arising from the benefit certificate, $500 attorney fees, and $600 penalty under the statute.

Many errors are assigned and elaborately discussed in the able brief of plaintiff in error. But we think that the material questions in the case are: Whether the contract sued on—the benefit certificate—is in effect a contract or policy of insurance? Is the evidence sufficient to authorize and sustain the finding and judgment of the court below in favor of the defendant in error? Or, on the other hand, are the statements and answers of the assured contained in her application and examination warranties of their truth? Or, does the testimony establish the fact that these statements and answers were untrue, as claimed, and deceived the plaintiff in error and invalidated the contract or benefit certificate? The other questions are incidental to and depend upon the disposition of the foregoing.

It is contended that the averments in the petition that the Council No. 1156 at Waco, Texas, is defendant's subsidiary agency, and E. A. McKenney is secretary or local agent at Waco, Texas, and representative of defendant, and the prayer for citation and issuance and service

thereof on said McKenney do not subject defendant, a corporation domiciled in the State of Massachusetts, to the jurisdiction of the courts of this State.

We think that it is wholly unimportant to discuss and determine the question as to whether the "subordinate councils or local divisions of a more extended organization," as the supreme council, "have in their transactions a dual nature," or stand in the relation of principal and agent. So, too, we believe it to be useless to inquire into the effect of the citation upon McKenney as the question is presented in the record. Whatever may be the merit of the exceptions to the sufficiency of the averments as to the relation of the principal and agent between the defendant and the Waco council, and whatever defect there may be in the prayer for citation upon McKenney, the secretary of the latter as agent, we think can be of no consequence in view of the fact that the defendant filed an answer to the merits and subjected itself to the jurisdiction of the court in this manner without objecting in limine to the citation.

If the citation served on the defendant in the lower court did not require it to appear or was not valid for that purpose, as claimed by it, then, none of its property having been seized under judicial process having the effect to require it to appear, it follows that no valid judgment could have been entered against it. Hence a case is made where there was no occasion for it to appear and answer as it did. But having filed its answer in October, 1887, which was amended at the April term, 1888, it voluntarily appeared and submitted itself to the jurisdiction and authority of the court, under the rule in York v. State, 73 Texas, 655, 656. This disposes of the first, second, and third assignments and the incidental questions growing out of them.

The fourth error assigned is the judgment of the court rendered against the plaintiff in error in the two items, "(1) 'in rendering judgment against appellant for $5000, together with 12 per cent damages on said principal sum,' and '(2) also $500 attorney fees,' thereby holding that defendant was a life and health insurance company and subject to the statute governing the same, because the same is a judgment against the law and the evidence in this: . The evidence in this cause showed conclusively that defendant is a mutual relief association, conducting its business by lodges or councils made up of its members in each locality, who meet at least once a month, and in their respective council rooms; and that defendant has no capital stock, and its relief funds are created and sustained by assessments upon its members in accordance with its by-laws and regulations; and as such an organization this defendant is not within the letter or spirit of said statute, but is expressly excepted.

"The court also erred in its conclusion of law and fact in finding as a fact that the defendant was an insurance company; subject to the

regulations governing such corporations, and that defendant's benefit certificate to Mrs. Larmour was a contract of insurance such as contemplated by the statute, because such finding was against the evidence, as shown hereinbefore.

"And also erred as a conclusion of law that defendant was included in or contemplated by the statute governing life and health insurance, because the same is not the law of the case."

One of the clearly expressed objects of the supreme council, as declared in article 2 of the constitution, is: "To establish a benefit fund from which, on satisfactory evidence of the death of a beneficial member of the order who has complied with all its lawful requirements, a sum not exceeding $5000 shall be paid * * * as the member may direct." Section 1 of the laws of the council specifies the rates and amounts to be paid by each member to the collector for the benefit fund, which payment is to be repeated on each mortuary assessment thereafter made. Six degrees are provided for, the amounts to be paid proportionately increasing with the degree. These payments constitute the benefit fund, the members being credited with assessments paid. The sixth degree, of which Mrs. Larmour was a member, required the payment at each assessment of $1.60. This section limits the amount to be paid upon the death of any member of this degree to $6000.

The mode of ascertaining the fact of a member's death through a committee is regulated, as well as the investigation of the cause and circumstances attending such death. This proof is furnished the supreme secretary, who is directed on its receipt to draw his draft on the supreme treasurer of the subordinate council of which the deceased was a member. Sections 1, 3, 4, 5, and 6 provide for the examination of the applicant by the medical examiner of the order, and for a certificate of the physical condition of said applicant. The examination of the assured discloses that the following among other questions were propounded by the medical examiner and answered by her:

"Cause of your mother's death? Ans. Pneumonia.

"Have any of your relatives been afflicted with consumption, raising of blood, or with pulmonary, scrofulous, or any hereditary disease? If so, state particulars. Ans. No.

"Is there anything to your knowledge or belief in your physical condition, family, or personal history or habits, tending to shorten your life, which is not distinctly set forth above? Ans. No."

This examination was made by Dr. Park, whose report seems to have been based upon a careful auscultation and percussion of the thorax; and in which report he states, after giving the rate of pulse, respiration, etc., that the "murmur is clear and distinct over both lungs, and character of respiration full, easy, and regular," and that "there is an

entire absence of indication of disease of the organs of respiration or their appendages." He considers that the applicant Mrs. Larmour "is habitually free from tendency to cough, difficulty of breathing," etc.

The benefit certificate was, upon the filing of the foregoing by the proper authorities (in its language), "issued to Companion Mary E. Larmour, a member of Waco Council No. 1156, American Legion of Honor, located at Waco, Texas, upon evidence received from said council that said companion is a sixth degree contributor to the benefit fund of this order, and upon condition that the statements made by said companion in application for membership in said council and the statements certified by said companion to the medical examiner, both of which are filed in the supreme secretary's office, be made a part of this contract, and upon condition that the said companion complies in the future with the laws, rules, and regulations now governing the said council and fund, or that may hereafter be enacted by the supreme council to govern said council and fund. These conditions being complied with, the supreme council of the American Legion of Honor hereby promises and binds itself to pay out of its benefit fund to Wm. W. Larmour, husband, a sum not exceeding $5000, in accordance with and under the provisions of the laws governing said fund, upon satisfactory evidence of the death of said companion, and upon the surrender of this certificate," etc.

The foregoing extracts from the constitution and by-laws of this society, together with the application of Mrs. Larmour and accompanying answers to questions propounded by the medical examiner and his report, as also the benefit certificate issued, are sufficient to show that the contract has all of the leading characteristics and essential features of a contract of a life insurance, which is an agreement, in consideration of a specified sum in the aggregate or at stated intervals of time during the contract, to make a payment in money upon the destruction or injury of something in which the assured has an interest. Property is the subject matter of fire and marine insurance. Life, health, and soundness · of the person constitute usually the subject matter of life and accident insurance.

This question is fully considered and decided in Commonwealth v. Wetherbee, 105 Massachusetts, 160; The State v. Farmers' Benevolent Association, 18 Nebraska, 291; and Farmer v. The State, 69 Texas, 566. The certificate, or contract, in the case before us differs in no essential aspect from those construed in the cases mentioned to possess the ordinary features of an insurance policy. It follows, of course, that the court did not err in so holding.

It remains then to determine from the foregoing evidence, in connection with a few facts to be noticed, whether there were untrue statements made by the assured in her application or contained in the answers in

the medical examination, as claimed, which had the effect to mislead and deceive defendant. The fifth assignment of error, which presents this question, can not be inserted because of its great length.

The special defense pleaded by the defendant, upon which this assignment is founded, and which is principally relied on to defeat a recovery, is that the assured stated in her medical examination, in answer to questions propounded to her, that her mother was dead. In answer to the inquiry as to the cause of her death, she replied "pneumonia;" that she also answered "no" in response to the question, "Have any of your near relatives been afflicted with consumption, raising of blood, or with pulmonary, scrofulous, cancerous, or any hereditary diseases?" That she was also asked: "Is there anything to your knowledge or belief, in your physical condition, family, or personal history or habits, tending to shorten your life, not distinctly set forth above?" to which she answered "no." In the application for certificate she stated: "I do hereby consent and agree that any untrue or fraudulent statement made, etc., or any concealment of facts by me in this application, shall forfeit the rights of myself and family or dependents to all benefits and privileges therein."

The defendant pleaded that the cause of the death of Mrs. Scarbrough, the mother of Mrs. Larmour, the assured, was consumption; that she had been afflicted with consumption; that the death of Mrs. Larmour was caused by inherited consumption, etc.

It is claimed by the plaintiff in error that it is established by the proof in this case that these answers and statements of the assured were untrue in fact. It is also contended that these answers, making a part of the application for membership, should be construed and held to be warranties of their truth, and that if one or more are shown to be untrue in fact it will operate to invalidate the contract and prevent a recovery, whether intentionally made or whether their falsity was not known to the applicant.

It can not be, and we presume is not, claimed in this case that the proof shows that the immediate cause of Mrs. Scarbrough's death was consumption. On the contrary, the court found that there was no evidence of that fact, which finding we think is conclusively sustained by the testimony. This results, then, in narrowing the question raised under the assignment to this issue: Was Mrs. Scarbrough "afflicted with consumption?" Because, looking to the evidence, it would depend upon the existence of that fact entirely, and the inference that the assured knew it, to establish the contention of the plaintiff in error that the assured's negative reply was untrue to the inquiry "whether there was anything in her condition or family history, etc., tending to shorten life," etc. Upon this point the evidence was conflicting, viewed in the strongest light for appellant. Two of the witnesses for the defendant (physicians) testified substantially that the remote cause of the

death of Mrs. Scarbrough was consumption, which in their opinion she inherited a predisposition to.  A physician testified that "milk leg or rising of the breasts was very debilitating, and if the ravages therefrom were not arrested culminated in death.  The symptoms of the above disease in its advanced stages are analogous to those of consumption, and are often mistaken for the latter disease.  Consumption is hereditary.  Persons die of diseases termed consumption, but if their ancestors or parents are not afflicted with it the children do not die of consumption."

The grandmother of the assured and mother of Mrs. Scarbrough testified that she was 78 years old; gave a history of the family, causes of death, etc., of different members.  She said:  "My daughter Nancy married J. W. Scarbrough, is now dead, and her physician told me that her death was caused from rising of her breasts.  J. B. Rutland died from the effect of a wound in the late war.  The father of these children died after a short illness from a disease in his head, at about 50 years.  There never was any hereditary disease in either branch of my family, such as scrofula, cancer, consumption, or any other of like character that I ever heard of.  There has never been any member of my family by either husband who was affected with any lung disease whatever.  My husband Rutland was not affected with any lung disease whatever; nor were his ancestors as far as I know; nor were he or they affected with any scrofulous disease; nor was myself or my daughter Nancy ever affected with any lung or scrofulous disease; nor were any of my ancestors."

I. B. Scarbrough testified that he was "a brother of J. W. Scarbrough and knew his wife Nancy Scarbrough; knew her before and at the birth of Mary E. Larmour, and knew her up to a very short time before her death.  At childbirth with two or three of the last children born to J. W. Scarbrough she suffered very much with milk leg and rising of the breast, and continued to be bothered with rising of the breast from the birth of her last child until her death.  I am acquainted with the family history on both sides, and never heard of any consumptive tendency in any member of either family.  The family history was and is that her disease was that of rising of the breast, and her death resulted from said disease."

Dr. Cohen testified in substance as follows:  Had attended Mrs. M. E. Larmour as physician at one time about two years previous to her death and again about six months before her death.  On last occasion examined her lungs and found no evidence of consumption.  I attended her up to February preceding her death, which occurred in May.  She was suffering with bowel complaint.  In September prior to her death I made a careful examination of the lungs of Mrs. Mary E. Larmour and found no evidence of consumption.

Conceding that the answers of the assured were, as claimed by plaintiff in error, warranties—but on this point we express no opinion—we think the evidence, from which we have made copious extracts, is sufficient to show that the finding to the effect that they were not untrue is well sustained.

The court also rightly held that the policy was substantially an insurance contract, and that the defendant below, plaintiff in error, was an insurance company. The necessary result of this would be that it is subject to the penalty prescribed by article 2953 of the Revised Statutes of the title (53) governing insurance companies, unless article 2971a, which was added to this title by the Act of March 28, 1885, makes some distinction between insurance companies conducted for profit to the officers and stockholders and those of the class to which the defendant belongs, having the effect to relieve plaintiff in error of this penalty. Article 2953, which constituted a part of the original title 53, incorporated in the Revised Statutes in 1879, governing insurance companies, provided for the penalty of 12 per cent damages on the amount of the policy, to be paid the holder for the company's failure to pay the loss within the time specified in the policy, together with all reasonable attorney fees, etc. This, as we have stated, was included in the judgment, and the question is raised by an assignment of error of the correctness of the judgment in this respect.

Article 2971a of the Act of 1885 referred to provides that "Nothing in this title shall be construed to affect or in any way apply to mutual relief associations * * * organized under the laws of any other State, which have no capital stock, and whose relief funds are created and sustained by assessment made upon the members of the association," etc.

The proof in this case shows that the plaintiff in error is such an association, organized under the laws of Massachusetts, and is within the meaning of the last cited article. The purpose of this article seems to be to declare in effect, that although a mutual relief association of the class to which plaintiff in error belongs may make an insurance contract which is substantially a life insurance policy, and that to that extent it may be, as was found by the court, an insurance company, still, if it was such an association as is described in that article, it would be relieved of the penalty, etc., mentioned in article 2953, which applies to such insurance companies as do not come within the meaning of article 2971a. This article having made this distinction between these classes of insurance companies, the plaintiff in error is, under the facts, entitled to the benefit thereof, and is therefore not subject to the penalty assessed by the court. The judgment assessing the penalty and attorney fees under article 2953 is not authorized in this case. In all other respects we think it is correct.

We think that the judgment should be reversed and reformed and here rendered for the defendant in error for the amount of the policy

as found by the court below—$5000, and interest arising from the benefit certificate, and that defendant in error be taxed with the costs incurred in this court of prosecuting this writ of error.

*Reversed and rendered.*

Adopted May 12, 1891.