## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

February 16, 2005

The Honorable Will Hartnett
Chair, Judiciary Committee
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0305

Re: Whether a city may use a Tax Code chapter 311 tax increment fund to reimburse a private developer for certain costs if the expenditures have not been competitively bid (RQ-0262-GA)

Dear Representative Hartnett:

You ask whether a city may use a Tax Code chapter 311 tax increment fund to reimburse a private developer for certain costs if the expenditures have not been competitively bid.[1]

## I. Legal Background

### A. Chapter 311 of the Tax Code

Chapter 311 of the Tax Code, the Tax Increment Financing Act, authorizes cities to use tax increment financing to develop certain areas. *See* TEX. TAX CODE ANN. § 311.001 (Vernon 2002) (short title). Section 311.003(a) authorizes the governing body of a municipality by ordinance to "designate a contiguous geographic area in the jurisdiction of the municipality to be a reinvestment zone to promote development or redevelopment of the area if the governing body determines that development or redevelopment would not occur solely through private investment in the reasonably foreseeable future." *Id.* § 311.003(a). To be designated as a reinvestment zone, the area must meet certain statutory criteria. *See id.* § 311.005; *see also* Tex. Att'y Gen. Op. No. JC-0152 (1999) at 8 (noting that article VIII, section 1-g(b) limits tax increment financing to an area that is "unproductive, underdeveloped, or blighted" and that Tax Code section 311.005 generally comports with that constitutional requirement).

Before adopting an ordinance providing for a reinvestment zone, the governing body, among other things, must prepare a preliminary reinvestment zone financing plan, which must be sent to each taxing unit that levies taxes on real property in the proposed zone, and must hold a public hearing on the creation of the zone. *See* TEX. TAX CODE ANN. § 311.003(b)-(c) (Vernon 2002). The

---

[1]*See* Letter from Honorable Will Hartnett, Chair, Judiciary Committee, Texas House of Representatives, to Honorable Greg Abbott, Texas Attorney General (Aug. 23, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

ordinance designating an area as a reinvestment zone must, among other things, describe the zone's boundaries, create a board of directors for the zone, and establish a tax increment fund. *See id.* § 311.004(a)(1)-(2), (6).

Once a reinvestment zone has been created and a board of directors appointed, *see id.* § 311.009 (board of directors), the board must adopt a project plan and a reinvestment zone financing plan that is "as consistent as possible" with the preliminary plans. *Id.* § 311.011(a). The project plan must include a map showing proposed improvements to real property in the zone and a list of estimated nonproject costs. *See id.* § 311.011(b). The reinvestment zone financing plan must include a detailed list of the estimated project costs and a list of proposed public works or improvements. *See id.* § 311.011(c). After their adoption by the board, the municipal governing body must by ordinance approve the plans, as well as any subsequent plan amendments. *See id.* § 311.011(d)-(e).

A municipality may "exercise any power necessary and convenient to carry out this chapter" including, for example, entering into agreements to implement project plans and constructing public works and improvements consistent with the project plan. *See id.* § 311.008(b)(4)(B). The governing body of the municipality "by ordinance or resolution may authorize the board to exercise any of the municipality's powers with respect to the administration, management, or operation of the zone or the implementation of the project plan for the zone," *see id.* § 311.010(a), with the exception of certain municipal powers, *see id.* § 311.010(a), (d), and "may restrict any power granted to the board" by chapter 311, *id.* § 311.010(d). Thus, while chapter 311 provides a reinvestment zone board with certain powers, and a city may delegate certain powers to a board, chapter 311 does not vest powers in the board independent of the city.

Chapter 311 improvements are financed by the tax increment, either directly or as a revenue source to retire tax increment bond indebtedness. After a reinvestment zone's creation and for the zone's duration, participating taxing units that tax real property in the reinvestment zone, with certain exceptions, must pay the tax increment into the tax increment fund. *See id.* § 311.013 (Vernon Supp. 2004-05).[2] In any particular tax year, the tax increment is calculated by subtracting

---

[2]Whether and to what extent a particular taxing unit is required to pay the tax increment into the tax increment fund will depend upon a number of factors. *See, e.g.,* TEX. TAX CODE ANN. §§ 311.0125(d) (Vernon Supp. 2004-05) ("If a taxing unit enters into a tax abatement agreement authorized by this section, taxes that are abated under that agreement are not considered taxes to be imposed or produced by that taxing unit in calculating the amount of: (1) the tax increment of that taxing unit; or (2) that taxing unit's deposit to the tax increment fund for the reinvestment zone."); 311.013(b) ("Each taxing unit shall pay into the tax increment fund for the zone an amount equal to the tax increment produced by the unit, less the sum of: (1) property taxes produced from the tax increments that are, by contract executed before the designation of the area as a reinvestment zone, required to be paid by the unit to another political subdivision; and (2) a portion, not to exceed 15 percent, of the tax increment produced by the unit as provided by the reinvestment zone financing plan or a larger portion as provided by Subsection (f)."); 311.013(d)-(e) (certain taxing units are not required to pay a tax increment into the tax increment fund if improvements are not undertaken in the zone within three years); 311.013(f) ("A taxing unit is not required to pay into the tax increment fund any of its tax increment produced from property located in a reinvestment zone designated under Section 311.005(a) or in an area added to a reinvestment zone under Section 311.007 unless the taxing unit enters into an agreement to do so with the governing body of the

(continued...)

"the tax increment base," which is the total appraised value of taxable real property in the reinvestment zone for the year in which the zone was designated, from the current total appraised value of taxable real property in the reinvestment zone. *See id.* § 311.012. "In general, the 'tax increments' are taxes derived by a taxing unit from the difference between the appraised value of all taxable real property located in a reinvestment zone for that year less the appraised value of the property when the zone was established. In other words, they are taxes attributable to the increased value of the real property in the zone presumably due to its development." Tex. Att'y Gen. Op. No. JC-0300 (2000) at 8 n.8 (citing Tax Code section 311.012).

In addition, a municipality may issue tax increment bonds and notes, the proceeds of which are used to pay project costs for the zone. *See* TEX. TAX CODE ANN. § 311.015(a) (Vernon 2002). Revenues from tax increment bond sales must be deposited in the tax increment fund, along with the tax increments collected by participating taxing units. *See id.* § 311.014(a).

The tax increment fund is used to finance improvements within the zone consistent with the plans. *See id.* § 311.014(a)-(c). Section 311.014(b) provides that "[m]oney may be disbursed from the fund only to satisfy claims of holders of tax increment bonds or notes issued for the zone, to pay *project costs* for the zone, or to make payments pursuant to an *agreement made under Section 311.010(b)* dedicating revenue from the tax increment fund." *Id.* § 311.014(b) (emphasis added). For purposes of the Act, the term "project costs" means

> the expenditures made or estimated to be made and monetary obligations incurred or estimated to be incurred by the municipality establishing a reinvestment zone that are listed in the project plan as *costs of public works or public improvements* in the zone, plus other *costs incidental to those expenditures and obligations.*

*Id.* § 311.002(1) (emphasis added). The definition further provides that "project costs" include a variety of related costs. *See id.* § 311.002(1)(A)-(K).[3] Section 311.010(b) authorizes either the board

---

[2](...continued)
municipality that created the zone. A taxing unit may enter into an agreement under this subsection at any time before or after the zone is created or enlarged. The agreement may include conditions for payment of that tax increment into the fund and must specify the portion of the tax increment to be paid into the fund and the years for which that tax increment is to be paid into the fund. The agreement and the conditions in the agreement are binding on the taxing unit, the municipality, and the board of directors of the zone.").

[3]Specifically, subsections (A) through (K) of section 311.002(1) include within project costs:

(A) capital costs, including the actual costs of the acquisition and construction of public works, public improvements, new buildings, structures, and fixtures; the actual costs of the acquisition, demolition, alteration, remodeling, repair, or reconstruction of existing buildings, structures, and fixtures; and the actual costs of the acquisition of land and equipment and the clearing and grading of land;

(B) financing costs, including all interest paid to holders of evidences of indebtedness or

(continued...)

of directors of a reinvestment zone or the governing body of the municipality that creates a reinvestment zone to enter "into agreements as the board or the governing body considers necessary or convenient to implement the project plan and reinvestment zone financing plan and achieve their purposes." *Id.* § 311.010(b). It further identifies certain terms that may be included in such an agreement:

> An agreement may provide for the regulation or restriction of the use of land by imposing conditions, restrictions, or covenants that run with the land. An agreement may during the term of the agreement dedicate, pledge, or otherwise provide for the use of revenue in the tax increment fund to pay *any project costs* that benefit the reinvestment zone, *including project costs relating to* the cost of buildings, schools, or other educational facilities owned by or on behalf of a school district, community college district, or other political subdivision of this state, railroad or transit facilities, affordable housing, the remediation of conditions that contaminate public or private land or buildings, the preservation of the facade of

---

[3](...continued)
other obligations issued to pay for project costs and any premium paid over the principal amount of the obligations because of the redemption of the obligations before maturity;

(C) real property assembly costs;

(D) professional service costs, including those incurred for architectural, planning, engineering, and legal advice and services;

(E) imputed administrative costs, including reasonable charges for the time spent by employees of the municipality in connection with the implementation of a project plan;

(F) relocation costs;

(G) organizational costs, including the costs of conducting environmental impact studies or other studies, the cost of publicizing the creation of the zone, and the cost of implementing the project plan for the zone;

(H) interest before and during construction and for one year after completion of construction, whether or not capitalized;

(I) the cost of operating the reinvestment zone and project facilities;

(J) the amount of any contributions made by the municipality from general revenue for the implementation of the project plan; and

(K) payments made at the discretion of the governing body of the municipality that the municipality finds necessary or convenient to the creation of the zone or to the implementation of the project plans for the zone.

TEX. TAX CODE ANN. § 311.002(1) (Vernon 2002).

a private or public building, or the demolition of public or private
buildings.

*Id.* (emphasis added).

### B.      Chapter 252 of the Local Government Code

Municipalities are generally subject to the competitive procurement requirements set
out in chapter 252 of the Local Government Code. In addition to establishing procedures for
competitive bidding, chapter 252 permits a municipality to use alternate competitive procurement
procedures in certain circumstances. *See, e.g.,* TEX. LOC. GOV'T CODE ANN. §§ 252.021(a)(1)
(Vernon Supp. 2004-05) (competitive sealed bidding or competitive sealed proposals), (2) (reverse
auction procedure), (3) (methods prescribed by Local Government Code, chapter 271, subchapter
H); 252.0415 (requests for proposals). For simplicity's sake, we refer to these procedures
collectively as competitive bidding requirements.

Pursuant to section 252.021, a municipality must comply with chapter 252's competitive
bidding requirements before "enter[ing] into a contract that requires an expenditure of more than
$25,000 from one or more municipal funds." *Id.* § 252.021(a). Section 252.022 exempts
expenditures for certain goods and services from the chapter's scope, *see id.* § 252.022, such as "a
procurement necessary to preserve or protect the public health and safety" and "a procurement for
personal, professional, or planning services," *id.* § 252.022(a)(2), (4).[4]

## II.      Analysis

You ask two questions with respect to a city's authority to make payments from the tax
increment fund:

> 1. May a city reimburse a private developer from the tax
> increment fund for costs incurred by the developer for environmental
> remediation, renovation, or facade preservation of a private or public
> building in the reinvestment zone, if such project costs have not been
> competitively bid in accordance with Chapter 252 of the Local
> Government Code?

> 2. Do any eligible project costs to be reimbursed from the tax
> increment fund have to be competitively bid?

---

[4]Certain conflicting home-rule city charter provisions control over a provision of chapter 252. *See* TEX. LOC.
GOV'T CODE ANN. § 252.002 (Vernon 1999) ("Any provision in the charter of a home-rule municipality that relates to
the notice of contracts, advertisement of the notice, requirements for the taking of sealed bids based on specifications
for public improvements or purchases, the manner of publicly opening bids or reading them aloud, or the manner of
letting contracts and that is in conflict with this chapter controls over this chapter unless the governing body of the
municipality elects to have this chapter supersede the charter.").

Request Letter, *supra* note 1, at 2.  Your questions raise three general issues:  whether the tax increment fund may be used to pay for environmental remediation, renovation, or facade preservation costs; whether a city's tax increment fund expenditures for project costs must be competitively bid; and whether a city may reimburse a private developer from the tax increment fund for costs that have not been competitively bid.

You have not provided us with any information about the city, reinvestment zone, or private developer at issue, and we address these concerns in general terms and not with respect to any particular fact situation.  We note that you ask about a city's authority to make expenditures from a tax increment fund to pay costs for specific work performed; you do not ask about the city's authority to designate an area or particular property to be a reinvestment zone or to adopt a project plan.  We assume that the city at issue has already designated the area as a reinvestment zone and has adopted a project plan.  We do not address that authority.

## A.    Allowable Uses for the Tax Increment Fund

With respect to the first issue, section 311.014(b) of the Tax Code provides that money may be disbursed from the tax increment fund "only to satisfy claims of holders of tax increment bonds or notes issued for the zone, to pay project costs for the zone, or *to make payments pursuant to an agreement made under Section 311.010(b)* dedicating revenue from the tax increment fund." TEX. TAX CODE ANN. § 311.014(b) (Vernon 2002) (emphasis added).  Your letter suggests that section 311.010(b) authorizes using a tax increment fund to pay a private developer for "costs incurred by the developer for environmental remediation, renovation, or facade preservation of a private or public building." Request Letter, *supra* note 1, at 2.

Section 311.010(b) generally authorizes either the board of directors of a reinvestment zone or the governing body of the municipality that creates a reinvestment zone to "enter into agreements as the board or the governing body considers necessary or convenient to *implement the project plan* and reinvestment zone financing plan and achieve their purposes," TEX. TAX CODE ANN. § 311.010(b) (Vernon 2002) (emphasis added), and more specifically provides that such an agreement may "dedicate, pledge, or otherwise provide for the use of revenue in the tax increment fund *to pay any project costs* that benefit the reinvestment zone, *including project costs relating to the cost* of . . . the remediation of conditions that contaminate public or private land or buildings, [or] the preservation of the facade of a private or public building," *id.* (emphasis added).  Thus, while section 311.010(b) specifically authorizes agreements dedicating tax increment fund revenues to pay for environmental remediation and facade preservation costs, such costs must be project costs. *See id.*  For this reason, under section 311.014(b) or 311.010(b), tax increment fund expenditures, other than payments to satisfy claims of holders of tax increment bonds or notes, must be to pay project costs.

To constitute "project costs," costs must fall within the section 311.002(1) definition of the term. *See id.* § 311.002(1).  Under section 311.002(1),"project costs" must be "listed in the project plan as costs of public works or public improvements in the zone" or constitute "other costs incidental to those expenditures and obligations." *Id.* § 311.002(1).  In addition, section

311.002(1)(K) provides that "project costs" include "payments made at the discretion of the governing body of the municipality that the municipality finds necessary or convenient to the creation of the zone or to the implementation of the project plans for the zone." *Id.* § 311.002(1)(K).

Thus, with regard to the first issue you raise, a city may expend tax increment funds to pay "costs incurred by the developer for environmental remediation, renovation, or facade preservation of a private or public building," Request Letter, *supra* note 1, at 2, only if the city determines that the costs constitute "project costs" within the meaning of section 311.002(1). In particular, the costs must be listed in the project plan or constitute "other costs incidental to those expenditures and obligations." TEX. TAX CODE ANN. § 311.002(1) (Vernon 2002). The costs may also constitute "project costs" if the city governing body finds them "necessary or convenient to the creation of the zone or to the implementation of the project plans for the zone." *Id.* § 311.002(1)(K). Whether a particular payment is for project costs involves questions of fact beyond the purview of an attorney general opinion. *See generally* Tex. Att'y Gen. Op. Nos. GA-0128 (2003) at 5 (a question requiring resolution of particular facts is "not one in which this office ordinarily engages in the opinion process"); GA-0106 (2003) at 7 ("[t]his office cannot find facts or resolve fact questions in an attorney general opinion").

## B.     Competitive Bidding

You also ask whether a city's authority to use the tax increment fund to pay a private developer for costs for environmental remediation or facade preservation costs or other project costs is limited by competitive bidding statutes. *See* Request Letter, *supra* note 1, at 2. Your questions indicate that the city, not some other entity, is expending funds. *See id.* ("May a *city* reimburse a private developer from the tax increment fund . . . ?") (emphasis added). Thus, we assume that the city and the reinvestment zone board of directors have not delegated the authority to manage the reinvestment zone to a local government corporation.[5]

The legislature has adopted statutes that authorize governmental entities like cities and counties to establish separate entities to expend tax funds and has provided, expressly or by clear implication, that these separate entities and the money they control are not subject to competitive bidding laws and similar statutes. In such cases, this office has concluded that statutes governing the creating entity's transactions do not apply. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0335 (2001) at 4 (concluding that "section 394.904(b) of the Local Government Code . . . excepts contracts of a local government corporation from the Professional Services Procurement Act"); JC-0206 (2000) at 4, 6 (concluding that Transportation Code section 431.101(e) exempts a local government corporation from the competitive bidding provisions applicable to the county that created it); JC-0109 (1999) at 2, 6 (concluding that a section 4B corporation is not subject to the public notice and bidding requirements of section 272.001(a) of the Local Government Code on the basis of

---

[5]Section 311.010(f) provides that the board of directors of a reinvestment zone and the governing body of the municipality "may enter into a contract with a local government corporation to manage the reinvestment zone or implement the project plan and reinvestment zone financing plan for the term of the agreement." TEX. TAX CODE ANN. § 311.010(f) (Vernon 2002) ("In this subsection, 'local government corporation' means a local government corporation created by the municipality under Chapter 431, Transportation Code.").

section 22 of article 5190.6, which provides that a development corporation is not a political subdivision or a political corporation); JC-0032 (1999) at 6-7 (concluding on basis of section 22 of article 5190.6 that a section 4A development corporation is not a political subdivision subject to the prevailing wage law, Government Code chapter 2258).

As these opinions illustrate, whether a statutory requirement applies to a particular entity or its transactions must be decided on the basis of the requirement's scope and the specific statutes governing the entity. You ask in particular whether project costs paid by a city from the tax increment fund must be competitively bid under chapter 252 of the Local Government Code, *see* Request Letter, *supra* note 1, at 2, and we limit our analysis to that statute. Neither chapter 252 nor chapter 311 of the Tax Code expressly addresses whether tax increment fund expenditures are subject to competitive bidding under chapter 252. And we have not located any judicial or attorney general opinion resolving the question. Section 252.021 of the Local Government Code generally requires a municipality to comply with certain competitive bidding procedures before entering into a contract that requires an expenditure, over a certain dollar amount, "from one or more municipal funds." *See* TEX. LOC. GOV'T CODE ANN. § 252.021(a) (Vernon Supp. 2004-05) ("Before a municipality may enter into a contract that requires an expenditure of more than $25,000 from one or more municipal funds, the municipality must . . . ."). You ask about a city's[6] authority to make expenditures from the tax increment fund. Thus, the answer to your question depends upon whether the tax increment fund is a municipal fund within the meaning of section 252.021.

Chapter 252 of the Local Government Code does not define the term "municipal fund," nor is the term defined in other statutes, cases, or attorney general opinions. Section 252.021(d) provides that chapter 252 "does not apply to the expenditure of municipal funds that are derived from an appropriation, loan, or grant received by a municipality from the federal or state government for conducting a community development program established under Chapter 373 if under the program items are purchased under the request-for-proposal process described by Section 252.042." *Id.* § 252.021(d). This section suggests that whether funds are "municipal funds" is determined by whether the municipality possesses and controls the money rather than by the money's source.

Chapter 311 vests the city with possession and control over the tax increment fund. The tax increment fund, which the city establishes by ordinance, consists of deposits of the "tax increment" by the city and other participating units, revenue from the sale of tax increment bonds or notes, and revenue from sales of property acquired as part of the tax increment fund. *See* TEX. TAX CODE ANN. §§ 311.004(a)(6), .012 (Vernon 2002), .013 (Vernon Supp. 2004-05). Although other taxing units may contribute taxes to the tax increment fund, the fund is expended according to plans approved by the municipal governing body in a city ordinance. *See id.* § 311.011 (Vernon 2002). Moreover,

---

[6]*See* Request Letter, *supra* note 1, at 2. An attorney general opinion has concluded that a city agency or division is subject to municipal competitive bidding requirements, *see* Tex. Att'y Gen. Op. No. MW-132 (1980) at 2 (concluding that city and county housing authorities are subject to competitive bidding requirements applicable to cities and counties), and it is likely that a reinvestment zone board is subject to chapter 252 as a municipal entity. Given that you ask about city expenditures and that chapter 311 clearly vests the creating municipal governing body with authority to expend the tax increment fund, however, we need not resolve whether municipal competitive bidding requirements apply to expenditures made by a reinvestment zone board.

chapter 311 does not remove tax increment fund spending from the city's control. Both the city and the reinvestment zone board are expressly authorized to implement the project and financing plans and to make agreements pledging tax increment fund revenues, *see id.* §§ 311.008(b)(1) (powers of the municipality to implement the plans), .010 (powers of the board of directors), but the municipal governing body may restrict any power granted to the board, *id.* § 311.010(d)(1). Furthermore, the governing body of the municipality is required to provide the other taxing units, the attorney general, and the comptroller with financial information about the tax increment fund on a yearly basis. *See id.* § 311.016. In addition, we note that section 311.014(c) provides that, subject to the tax increment bond and note holders' agreement, "money in a tax increment fund may be temporarily invested in the same manner *as other funds of the municipality.*" *Id.* § 311.014(c) (emphasis added).

In sum, the legislature has not provided in chapter 311 that the tax reinvestment zone or its board is an entity separate from the city, nor has it expressly provided that tax increment fund expenditures are not subject to competitive bidding statutes and similar laws. Furthermore, the city possesses the tax increment fund and controls its use, may commit fund revenues, and is accountable for the fund's use to other entities. Taken as a whole, chapter 311 suggests that the tax increment fund is a fund "of the municipality." *Id.*

For these reasons, we conclude that a tax increment fund is a municipal fund within the meaning of chapter 252 of the Local Government Code and that chapter 252 may apply to expenditures from the tax increment fund. Whether a particular expenditure is subject to competitive bidding will depend upon whether the expenditure falls within the terms of section 252.021. *See* TEX. LOC. GOV'T CODE ANN. § 252.021(a) (Vernon Supp. 2004-05) ("Before a municipality may enter into a contract that requires an expenditure of more than $25,000 from one or more municipal funds, the municipality must [follow certain procedures.]"). In addition, a particular expenditure may be exempt from chapter 252 under section 252.022. *See id.* § 252.022(a) ("This chapter does not apply to an expenditure for [certain goods and services].").

We have received a brief that contends that chapter 252 should not apply to the tax increment fund expenditures you ask about because private developers will have no incentive to improve their property if they must compete with others for reinvestment zone funding to perform the work.[7] However, chapter 252 clearly applies to expenditures from municipal funds for real property improvements made by private developers because it includes a limited exception for such expenditures. Specifically, section 252.022(a)(11) excepts from chapter 252 an expenditure for "a payment under a contract by which a developer participates in the construction of a public improvement as provided by Subchapter C, Chapter 212." *Id.* § 252.022(a)(11). Subchapter C of chapter 212 of the Local Government Code provides that "a municipality with 5,000 or more inhabitants may make a contract with a developer of a subdivision or land in the municipality to construct public improvements, not including a building, related to the development," without complying with chapter 252. *Id.* § 212.071; *see also id.* § 212.072(a) ("Under the contract, the

---

[7]*See* Brief from Bennett Sandlin, Legal Services Director, Texas Municipal League, to Nancy S. Fuller, Chair, Opinion Committee, Office of Attorney General, at 1 (Sept. 24, 2004) (on file with Opinion Committee) [hereinafter TML Brief].

developer shall construct the improvements and the municipality shall participate in their cost.").[8] Subchapter C also expressly provides that if the "contract does not meet the requirements of this subchapter, Chapter 252 applies to the contract if the contract would otherwise be governed by that chapter." *Id.* § 212.071.

## C.    Reimbursement

Finally, we consider whether a city may reimburse a private developer from the tax increment fund for costs that have not been competitively bid.

You ask about a city's authority to reimburse a private developer for project costs, but do not provide specific facts. *See* Request Letter, *supra* note 1, at 2. By "reimbursement," you could mean that the city agreed in advance to pay the private developer for the costs upon completion of the work and that the developer has performed the work and now seeks payment pursuant to the agreement. In that case, the expenditure is permissible if it is authorized by chapter 311 and the agreement to pay for the work was entered into pursuant to competitive bidding requirements, if applicable. On the other hand, you could mean that the private developer seeks reinvestment zone funding for costs for work the developer has already performed but that the city did not agree in advance to pay. We assume you mean the latter.

As we have concluded, some tax increment fund expenditures will be subject to competitive bidding under chapter 252 of the Local Government Code. Under chapter 252, a municipality must comply with competitive bidding requirements *before* agreeing to pay municipal funds. *See* TEX. LOC. GOV'T CODE ANN. § 252.021(a) (Vernon Supp. 2004-05) (*"Before a municipality may enter into a contract* that requires an expenditure of more than $25,000 from one or more municipal funds, the municipality must [follow certain procedures.]") (emphasis added). Moreover, competitive bidding procedures contemplate potential contractors submitting bids to undertake work that has not yet been performed, the city awarding a contract to the lowest responsible bidder, the successful bidder performing the work, and the city then paying for the work pursuant to the contract. *See, e.g.*, *id.* § 252.043. If a municipal expenditure is subject to chapter 252, the city would be precluded from reimbursing a person for costs incurred for work not performed pursuant to a competitively bid contract.

We have received a brief that contends that chapter 252 does not apply when a city reimburses a private developer because chapter 252 applies to a city's expenditures and does not apply to private entities. *See* TML Brief, *supra* note 7, at 1. However, you do not ask about a city's authority to require a private developer to procure contracts by competitive bidding but rather about

---

[8]*See also* TEX. LOC. GOV'T CODE ANN. § 212.072(b) (Vernon Supp. 2004-05) ("The contract must establish the limit of participation by the municipality at a level not to exceed 30 percent of the total contract price. In addition, the contract may also allow participation by the municipality at a level not to exceed 100 percent of the total cost for any oversizing of improvements required by the municipality, including but not limited to increased capacity of improvements to anticipate other future development in the area. The municipality is liable only for the agreed payment of its share, which shall be determined in advance either as a lump sum or as a factor or percentage of the total actual cost as determined by municipal ordinance.").

a city's authority to pay a private developer for costs the developer has incurred. We conclude that when chapter 252 competitive bidding requirements apply to an expenditure, a city is necessarily precluded from reimbursing a private developer. This conclusion does not require a private developer to comply with chapter 252 but rather limits a city's authority to expend funds without complying with chapter 252.

Even if tax increment fund expenditures are not subject to competitive bidding (because they fall under the section 252.021 threshold or are excepted under section 252.022), reimbursing a private developer for work performed without the city's prior agreement raises additional concerns.

First, chapter 311 of the Tax Code contemplates that the tax increment fund will be used to pay for project costs outlined in advance in the project plan, *see* TEX. TAX CODE ANN. §§ 311.002(1) (Vernon 2002) (defining "project costs"), and pursuant to "agreements . . . to implement the project plan and reinvestment zone financing plan," *id.* § 311.010(b). *See generally id.* § 311.014(b) (Tax increment fund "[m]oney may be disbursed from the fund only to satisfy claims of holders of tax increment bonds or notes issued for the zone, to pay *project costs* for the zone, or to make payments pursuant to an *agreement made under Section 311.010(b)* dedicating revenue from the tax increment fund.") (emphasis added). In addition, money in a tax increment fund, taxes deposited by participating taxing units, is public money subject to constitutional limitations on the use of public funds. *See* TEX. CONST. art. III, § 52 ("the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company"). *Cf.* Tex. Att'y Gen. Op. Nos. GA-0264 (2004) at 10-12, JC-0118 (1999) at 9 (concluding that sales and use tax proceeds collected for economic development under the Development Corporation Act of 1979 are public funds subject to article III, section 52). As a result, a city must ensure that tax increment fund expenditures are supported by sufficient consideration and are not gratuitous payments. *See Tex. Mun. League Intergov'tl Risk Pool v. Tex. Workers' Comp. Comm'n,* 74 S.W.3d 377, 383 (Tex. 2002) ("[S]ection 52(a)'s prohibiting the Legislature from authorizing a political subdivision 'to grant public money' means that the Legislature cannot require gratuitous payments to individuals, associations, or corporations. A political subdivision's paying public money is not 'gratuitous' if the political subdivision receives return consideration.") (citations omitted). In making an expenditure of public funds that benefits a private person or entity, "a [political subdivision's governing body] will avoid violating article III, section 52 if it (i) determines in good faith that the expenditure serves a public purpose and (ii) places sufficient controls on the transaction, contractual or otherwise, to ensure that the public purpose is carried out." Tex. Att'y Gen. Op. No. GA-0188 (2004) at 4.

Any city tax increment fund expenditure must be authorized by chapter 311 and must comport with article III, section 52. However, before reimbursing a private developer for work performed without the city's prior agreement, we would advise a city to be especially careful to consider whether the expenditure (i) is for a project cost authorized by the project plan and (ii) is a gratuitous payment prohibited by article III, section 52, particularly given that the city is not contractually obligated to pay.

## S U M M A R Y

A city may use a Tax Code chapter 311 tax increment fund to pay a private developer for environmental remediation, renovation, or facade preservation costs if the costs constitute "project costs" within the scope of section 311.002(1). A tax increment fund is a municipal fund within the meaning of chapter 252 of the Local Government Code, and chapter 252's competitive bidding requirements may apply to expenditures from the tax increment fund. Whether a particular expenditure is subject to competitive bidding will depend upon whether the expenditure falls within the terms of section 252.021 and whether the expenditure is exempt from chapter 252 under section 252.022. If a municipal expenditure is subject to chapter 252, the city would be precluded from reimbursing a person for costs incurred for work not performed pursuant to a competitively bid contract.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee