

# KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

January 17, 2018

The Honorable Paul Bettencourt
Chair, Select Committee on Property
Tax Reform
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. KP-0177

Re: Restrictions on the use of a school district's public funds to provide transportation to and from polling places and for political communications for or against a particular measure or candidate (RQ-0201-KP)

Dear Senator Bettencourt:

You ask two questions related to the authority of a school district to spend public funds to promote voting among students and employees within the school district.[1] As background, you explain "that several Texas independent school districts recently adopted a resolution purportedly designed to create a culture of voting" in the districts.[2] Request Letter at 1. You raise concerns about certain portions of these resolutions, particularly those portions that "espouse a political perspective on education," and ask whether the district may use public funds to implement them. *Id.* at 1, 4.

You first ask whether a school district may use public funds to provide transportation for employees or students to and from polling places. *Id.* at 4. You explain that the resolution adopted by some school districts includes the following provision:

> That the Board of Trustees of _____ ISD authorizes the administration to take steps necessary to ensure maximum participation by District employees and eligible students in the elections process, which may include: . . . Where feasible, providing District transportation to and from polling places . . . .

*Id.* at 2. You ask whether a district may use "taxpayer-funded transportation" in this way. *Id.*

Independent school district boards possess only those powers expressly conferred by law or necessarily implied from the powers conferred. *Stout v. Grand Prairie Indep. Sch. Dist.*, 733

[1]Letter from Honorable Paul Bettencourt, Chair, Senate Select Comm. on Prop. Tax Reform, to Honorable Ken Paxton, Tex. Att'y Gen at 4 (Dec. 12, 2017), https://www.texasattorneygeneral.gov/opinion/requests-for-opinions-rqs ("Request Letter").

[2]You indicate that "the resolution can be found at http://texaseducatorsvote.com/." *Id.* at 1.

S.W.2d 290, 296 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (explaining that "a school district . . . exercises only such powers as are delegated to it by the state"). The Legislature has given school district boards "the exclusive power and duty to govern and oversee the management of the public schools of the district." TEX. EDUC. CODE § 11.151(b). Furthermore, the Legislature provided that "[l]ocal school funds . . . may be used for . . . purposes necessary in the conduct of the public schools determined by the board of trustees." *Id.* § 45.105(c). That said, school districts must abide by any statutory or constitutional restraints on their spending of public funds. Relevant to your request, the Texas Constitution prohibits a political subdivision of the State from granting "public money or thing of value in aid of, or to any individual . . . whatsoever." TEX. CONST. art III, § 52(a); *see also id.* § 51 (likewise prohibiting the Legislature from authorizing a grant of public money to an individual). Article III, section 52(a), prevents the gratuitous grant of public funds to any individual. *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995). "A transfer of funds for a public purpose, with a clear public benefit received in return, does not amount to a lending of credit or grant of public funds in violation of article III, sections 51 and 52." *Id.* To answer your question, we must therefore analyze whether providing transportation for employees or students to and from polling places serves a public purpose of a school district.

We first address the provision of transportation for students to and from polling places. The Legislature expressly directed public schools to prepare "students to be thoughtful, active citizens." TEX. EDUC. CODE § 4.001(b) (outlining the overall objectives of public education); *see also id.* § 11.002 (providing that school districts "have the primary responsibility for implementing the state's system of public education"). School districts must offer a required curriculum in government. *Id.* § 28.002(a)(1)(D). Pursuant to this requirement, the State Board of Education implemented regulations requiring that high school students "understand the responsibilities, duties, and obligations of citizenship such as being well informed about . . . voting," as well as understand "the voter registration process and the criteria for voting in elections." 19 TEX. ADMIN. CODE § 113.44(c)(14)(C)–(D); *see also* TEX. EDUC. CODE § 28.002(c) (requiring the Board to identify essential knowledge and skills and requiring each district to provide instruction in them at appropriate grade levels).[3] Thus, the Legislature and the State Board of Education have expressly directed school districts to promote voter education among the students of a school district. However, absent an educational purpose in providing students transportation to the polling locations, a court would likely conclude that the transportation serves no public purpose of the school district and therefore violates article III, section 52(a) of the Texas Constitution.[4]

---

[3]In addition, high school principals must serve as deputy voter registrars and on multiple occasions throughout the year "distribute an officially prescribed registration application form to each student who is or will be 18 years of age or older during that year." TEX. ELEC. CODE § 13.046(a), (d). The Secretary of State implemented rules requiring the principal to review the applications for completeness and allowing the principal to assist in completing the forms. 1 TEX. ADMIN. CODE § 81.7(d)(2)(C)(i)–(ii).

[4]Briefing submitted in response to the opinion request suggests that a school district could decide to transport students to a local polling place for something akin to a field trip. *See* Letter from Barry Haenisch, Exec. Dir., Tex. Ass'n of Cmty. Schs. at 5 (Jan. 4, 2018). However, section 61.001 of the Election Code, titled "Bystanders Excluded," expressly prohibits a person from being in a polling place except as permitted by the Election Code. TEX. ELEC. CODE § 61.001(a). The Election Code makes no provision for student observers, and a school district would have no authority to provide educational instruction inside a polling location while voting takes place.

We separately consider the provision of transportation for employees of the school district to and from polling places. A school district may provide for any employee travel expenses that are necessary in the conduct of the public schools. *See* TEX. EDUC. CODE § 45.105(c); *see* Tex. Att'y Gen. Op. No. H-133 (1973) at 4 (recognizing that payment of school district trustee travel expenses may or may not be authorized under the law, depending on whether they are "necessary in the conduct of the public schools"). However, absent the performance of some educational function on behalf of the district's students, we question whether providing transportation for employees to and from polling places serves a public purpose of the school district. *See Tex. Mun. League Intergov'tl Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 384 (Tex. 2002) (explaining that the predominant purpose of an expenditure of public funds must serve a public purpose, not benefit private parties). A prior opinion of this office concluded that a school district could not fund travel expenses "of persons who have no responsibilities or duties to perform" on behalf of the school district. Tex. Att'y Gen. Op. No. MW-93 (1979) at 2 (addressing a school board's authority to pay travel expenses of the spouse of a trustee). If a school district employee has no responsibility or duty to perform on behalf of the school district at the polling location, a court would likely conclude that a school district's funding of transportation for that individual to the polling location serves no public purpose of the school district and violates article III, section 52(a) of the Texas Constitution.

You also ask "[w]hat legal constraints exist regarding a school district's ability to spend or authorize the spending of public funds for political advertising or communications designed to influence voters to vote for or against a particular measure or candidate." Request Letter at 4. Two separate provisions prohibit a school district from supporting a candidate or measure in an election. Section 11.169 of the Education Code provides:

> Notwithstanding any other law, the board of trustees of an independent school district may not use state or local funds or other resources of the district to electioneer for or against any candidate, measure, or political party.

TEX. EDUC. CODE § 11.169. The Education Code does not define the term "electioneer." A common understanding of the term is "to work for the election of a candidate or party." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 400 (11th ed. 2005); *see also* TEX. ELEC. CODE § 85.036(f)(2) (defining "electioneering" for purposes of a specific Election Code provision to include "the posting, use, or distribution of political signs or literature"). Thus, the Legislature prohibited a board of trustees of a school district from using public funds to work for a particular measure or candidate.

In addition, subsection 255.003(a) of the Election Code provides: "An officer or employee of a political subdivision may not knowingly spend or authorize the spending of public funds for political advertising." TEX. ELEC. CODE § 255.003(a). A school district is a political subdivision and is therefore subject to this provision. *See id.* § 1.005(13) (defining "political subdivision" for purposes of the Election Code to include counties, cities, and school districts). The Legislature defined "political advertising" as:

a communication supporting or opposing a candidate for nomination or election to a public office or office of a political party, a political party, a public officer, or a measure that:

(A)  in return for consideration, is published in a newspaper, magazine, or other periodical or is broadcast by radio or television; or

(B)  appears:

(i)   in a pamphlet, circular, flier, billboard, or other sign, bumper sticker, or similar form of written communication; or

(ii)  on an Internet website.

*Id.* § 251.001(16). A person who violates section 255.003(a) of the Election Code commits a Class A misdemeanor. *Id.* § 255.003(c).[5] While no reported court cases construe this provision, the Texas Ethics Commission addressed the application of this statute to two factual scenarios involving school districts. In Ethics Advisory Opinion No. 45, the Commission concluded that section 255.003 prohibits distributing political advertising using school district employees on school district time or with school district equipment. *See* Tex. Ethics Comm'n Op. No. 45 (1992). Similarly, the Commission concluded that placing political advertising in a teachers' lounge would involve spending public funds in violation of section 255.003. *See* Tex. Ethics Comm'n Op. No. 443 (2002). Thus, in addition to prohibiting the actual publishing of political advertising, subsection 255.003(a) prohibits the use of school district staff, facilities, or other resources to advertise for or against a candidate or measure.

You indicate that the resolution adopted by several school districts "links to other websites that are partisan in nature." Request Letter at 1. We see no significant distinction between distribution of political advertising in a teachers' lounge and distribution electronically through e-mail or an Internet website. Thus, a court would likely conclude that the use of public funds to link to an Internet website promoting a specific candidate or measure is itself a communication supporting or opposing a candidate or measure in violation of section 11.169 of the Education Code and subsection 255.003(a) of the Election Code.

---

[5]It is an "affirmative defense to prosecution . . . that an officer or employee of a political subdivision reasonably relied on a court order or an interpretation of this section in a written opinion issued by: (1) a court of record; (2) the attorney general; or (3) the [Texas Ethics Commission]." TEX. ELEC. CODE § 255.003(d).

# S U M M A R Y

Absent an educational purpose in providing students transportation to the polling locations, a court would likely conclude that the transportation serves no public purpose of the school district and therefore violates article III, section 52(a) of the Texas Constitution.

If a school district employee has no responsibility or duty to perform on behalf of the school district at the polling location, a court would likely conclude that a school district's funding of transportation to the polling location for that individual serves no public purpose of the school district and therefore violates article III, section 52(a) of the Texas Constitution.

Section 11.169 of the Education Code prohibits a board of trustees of a school district from using public funds to work for a particular measure or candidate. In addition, subsection 255.003(a) of the Election Code makes it a criminal offense for an officer or employee of a school district to knowingly spend or authorize the spending of public funds for political advertising. A court would likely conclude that the use of public funds to link to an Internet website promoting a specific candidate or measure is itself a communication supporting or opposing a candidate or measure in violation of this provision.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee